IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA,                  )
                                           )
                                           )
              *Plaintiff,*                 )
                                           )
                       v.                  )
                                           ) CIVIL ACTION NO. 1:13-CV-01059-SOH
LION OIL COMPANY,                          )
                                           )
              *Defendant.*                 )
                                           )

**CONSENT DECREE**

## TABLE OF CONTENTS

I. JURISDICTION AND VENUE ................................................................................. 2

II. APPLICABILITY ................................................................................................... 2

III. DEFINITIONS ...................................................................................................... 3

IV. CIVIL PENALTY ................................................................................................. 5

V. COMPLIANCE REQUIREMENTS ....................................................................... 6

VI. REPORTING REQUIREMENTS .......................................................................... 9

VII. STIPULATED PENALTIES ................................................................................ 11

VIII. FORCE MAJEURE ............................................................................................ 15

IX. DISPUTE RESOLUTION ..................................................................................... 17

X. INFORMATION COLLECTION AND RETENTION ........................................... 19

XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................ 22

XII. COSTS ................................................................................................................ 24

XIII. NOTICES .......................................................................................................... 24

XIV. EFFECTIVE DATE ........................................................................................... 26

XV. RETENTION OF JURISDICTION ...................................................................... 26

XVI. MODIFICATION ............................................................................................... 27

XVII. TERMINATION ............................................................................................... 27

XVIII. PUBLIC PARTICIPATION ............................................................................. 28

XIX. SIGNATORIES/SERVICE ................................................................................. 28

XX. <u>INTEGRATION</u>........................................................................................... 29

XXI. <u>FINAL JUDGMENT</u> ................................................................................... 29

*APPENDIX A*

*SMC 6/28/13*

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree, alleging that Defendant Lion Oil Company, violated Section 301 of the Clean Water Act ("Act"), 33 U.S.C. § 1311.

The Complaint alleges that Defendant violated the Act by discharging effluent that exceeded the limits contained in NPDES permit AR0000647 at its petroleum refinery ("Refinery") in El Dorado, Arkansas. These violations are alleged to include episodic and/or continuous exceedances of permitted limits for zinc, lead, selenium, total dissolved solids ("TDS"), and sulfate that occurred beginning on January 1, 2010 and continuing to the present.

Lion Oil has pursued the design, permitting and installation of a Joint Pipeline, together with other affected entities, to remove its effluent discharges from Loutre Creek to the Ouachita River. Construction of the Joint Pipeline is underway and is expected to be completed on or before August 31, 2013. When the Joint Pipeline is complete, Lion Oil will redirect its discharges in accordance and in compliance with NPDES permit AR0050296.

The civil penalty agreed upon in this Consent Decree takes full account of the anticipated completion of the Joint Pipeline on or before August 31, 2013.

The United States and Lion Oil ("Parties") recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

-1-



NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the Act, 33 U.S.C. § 1319(b), and over the Parties.  Venue lies in this District pursuant to Section 309(b) of the Act,  33 U.S.C. § 1319(b) and 28 U.S.C. § 1391 and 1395(a), because this is the district where the Defendant is located and the district in which the alleged violations occurred.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and over Defendant and consents to venue in this judicial district.

2.     For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 309 of the Act, 33 U.S.C. § 1319.

## II. APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.     No transfer of ownership or operation of the Refinery, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its

-2-

obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a signed certification from Lion Oil and the proposed buyer that nothing in the sale agreement will prevent the implementation of any provisions of this Consent Decree to EPA Region Six, the United States Attorney for the Western District of Arkansas, and the United States Department of Justice, in accordance with Section XIII of this Decree (Notices).  Any transfer of ownership or operation of the Refinery without complying with this Paragraph constitutes a violation of this Decree.

5.       Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained by Defendant after the effective date of this Consent Decree to perform work required under this Consent Decree.  Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.       In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.  DEFINITIONS

7.       Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act

*SMP 6/28/13*

or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

        a.     "Complaint" shall mean the Complaint filed by the United States in this action and all appendices attached hereto;

        b.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto;

        c.     "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

        d.     "Defendant" shall mean Lion Oil Company, named in the Complaint;

        e.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

        f.     "Effective Date" shall have the definition provided in Section XIV.

        g.     "Refinery" shall mean Defendant's petroleum refinery located at 1000 McHenry Street in the southwest section of the town of El Dorado, located between Highway 15 and Highway 82 bypass, in Section 32, Township 17 South, Range 15 West, in Union County, Arkansas.

h.      "Joint Pipeline" shall mean the pipeline being constructed by Defendant in partnership with the El Dorado Water Utility, Great Lakes Chemical Corporation, and El Dorado Chemical Company to carry effluent from Defendant's Refinery, and the other companies' respective facilities, to the Ouachita River and permitted under NPDES permit AR0050296;

i.      "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

j.      "Parties" shall mean the United States and Lion Oil Company;

k.      "Section" shall mean a portion of this Decree identified by a roman numeral;

l.      "State" shall mean the State of Arkansas; and

m.      "United States" shall mean the United States of America, acting on behalf of EPA.

## IV.  CIVIL PENALTY

8.      Within 30 Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $504,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

9.      Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, prior to entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Western District of Arkansas, 414 Parker Avenue, Fort Smith, AR 72901, (479) 783-5125.  At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Lion Oil Company*, and shall reference the civil action number and DOJ case number 90-5-2-1-06064/4, to the United States in accordance with Section XIII of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio  45268

10.      Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V.  COMPLIANCE REQUIREMENTS

*Pipeline Completion*

11.      Defendant is party to an agreement between and among Great Lakes Chemical Corporation, El Dorado Chemical Company, and the City of El Dorado Water Utility under which a pipeline meant to carry effluent from their respective facilities to the Ouachita River is being constructed.

12.     Defendant will take all steps within its control, and direct its contractors or agents to take all steps within their control, to complete the Joint Pipeline as quickly as possible.

13.     Defendant will take no action to impede the completion of the Joint Pipeline.

14.     The Joint Pipeline shall be completed, and operation of the Joint Pipeline shall be commenced by August 31, 2013.

### *Interim TDS and Sulfate Controls*

15.     On September 24, 2012, Lion Oil took steps to reduce Total Dissolved Solids ("TDS") and sulfates in its wastewater on an interim basis, by adding $SO_2$ reducing catalyst additives to its fluid catalytic cracking unit, which reduces those compounds in its Belco scrubber purge stream.

16.     The interim reduction in TDS and sulfate in the Belco scrubber purge stream shall be measured using the methodology attached as Appendix A to this Consent Decree.

17.     Within 30 Days of the Effective Date of this Consent Decree, Defendant shall submit to EPA a report showing an average interim reduction of TDS and sulfate of at least 50 percent as measured by the methodology described in Appendix A to this Consent Decree for the period from September 24, 2012 until the Effective Date.  If Lion Oil does not achieve an average interim reduction of TDS and sulfate of at least 50 percent for the period from September 24, 2012 until the Effective Date, Lion Oil shall continue to implement the interim TDS and sulfate controls in accordance with Appendix A until it achieves an average 50% reduction.

-7-

6/28/13

18.     Defendant shall continue to operate the interim TDS and sulfate controls described in paragraph 17 until the commencement of operation of the Joint Pipeline or until Lion Oil demonstrates an average 50% reduction, whichever occurs later.

*Cessation of Pipeline Construction*

19.     In the event that an order of any court results in the complete cessation of construction of the Joint Pipeline lasting more than 120 consecutive Days, Lion Oil shall develop a plan to comply with its NPDES permit effluent limits for TDS, sulfates, and selenium.

20.     The plan will be submitted to EPA on or before the 60th Day following the 120th consecutive Day of the complete cessation of the Joint Pipeline construction.

21.     Within sixty (60) Days of receipt of Lion Oil's plan, EPA may object to the plan if EPA believes that the plan does not include steps that, if implemented as proposed, would likely result in compliance with its NPDES permit effluent limits for TDS, sulfates, and selenium then in effect for the Refinery.

22.     If EPA objects in accordance within the sixty Day period specified in Paragraph 21 above, Lion Oil shall modify the plan to address EPA's objections, within sixty (60) days of receipt of EPA's objections, or invoke dispute resolution in accordance with Section IX of this Consent Decree.

23.     If EPA does not object to the plan or if the plan is modified to address EPA's objections or confirmed or modified as the result of dispute resolution in accordance with Section IX of this Consent Decree, Lion Oil will implement the plan unless and until construction of the Joint Pipeline resumes, at which time Lion Oil will have no further obligation to implement the plan.

24.     A failure to object to the plan does not constitute an acknowledgement on the part of EPA that implementation of the plan will result in compliance with any NPDES permit then in effect for the Refinery.

25.     <u>Permits</u>.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendant may seek relief under the provisions of Section VIII of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI. REPORTING REQUIREMENTS

26.     Defendant shall submit the following reports:

a.      Within 30 Days after the end of each semi-annual period (i.e., by July 30 and January 30), until termination of this Decree pursuant to Section XVII, Defendant shall submit by first class mail or Federal Express and electronic mail a report for the preceding six months that shall detail the status of Defendant's progress in implementing the requirements of this Consent Decree, including any construction or compliance measures; any problems encountered or anticipated, together with implemented or proposed solutions; the status of any permit applications; and any reports submitted to state agencies. The first semi-annual report shall be due on January 30, 2014.

_MR 6/28/13_

b.      The report shall include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the likely cause of such non-compliance. The report shall detail the remedial steps taken, or to be taken, to prevent or minimize such non-compliance. If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration, in writing, within ten working Days after the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII of this Consent Decree (Force Majeure).

27.      Whenever any violation of this Consent Decree or of any applicable permit or any other event relating to Defendant's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and the State orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

28.      All reports shall be submitted to the persons designated in Section XIII of this Consent Decree (Notices).

-10-

SW 6/28/13

29.    Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

30.    The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

31.    Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.  STIPULATED PENALTIES

32.    Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this

Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

33.   Late Payment of Civil Penalty

If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $3000 per Day for each Day that the payment is late.

34.   Pipeline Completion

Should the Joint Pipeline not become operational in accordance with the requirements of Paragraph 14 of this Consent Decree, the following stipulated penalties shall accrue each day until the Pipeline commences operation, unless the delay is the result of a court ordered cessation of construction or a force majeure event:

| Penalty Per Day | Period of Noncompliance |
|---|---|
| $1,500 | 1st through 30th Day |
| $2,500 | 31th through 60th Day |
| $3,000 | 61st Day and beyond |

Stipulated penalties assessed under this paragraph 34 are in lieu of civil penalties for exceedances of permitted levels of TDS, Sulfates, and Selenium from Outfall 001 of NPDES Permit No. AR0000647 that occur as a result of Lion Oil's discharge into Loutre Creek after August 31, 2013.

35.   Plan Submission

_MML 6/28/13_

In the event Defendant fails to submit a plan for NPDES permit compliance by the 60th Day following the 120th consecutive Day of the complete cessation of Joint Pipeline construction, the following stipulated penalties shall accrue:

| Penalty Per Day | Period of Noncompliance |
|---|---|
| $1,500 | 1st through 30th Day |
| $2,500 | 31th through 60th Day |
| $3,000 | 61st Day and beyond |

36.    Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of any reporting requirement of Section V or VI of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $750 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $2,500 | 31st Day and beyond |

37. Except as set forth above, stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate

violations of this Consent Decree. Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

38.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

39.     Stipulated penalties shall continue to accrue as provided in Paragraph 37, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of EPA's decision or order. If the dispute is resolved by agreement, Defendant shall pay the amount agreed upon within 30 Days of the agreement.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

40.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

-14-

*SMP 6/28/13*

41.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

42.     Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of the Act, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## VIII.  FORCE MAJEURE

43.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. Force majeure events include, but are not limited to, extreme weather events, a court order halting construction or use of the pipeline, a repeal of

-15-

*JMP* 6/28/13

the pipeline permit, acts of eco terrorism, etc. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

44.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to the United States, within five (5) business days of when Defendant first knew that the event might cause a delay.  Within seven (7) business days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay known at the time; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

45.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to

-16-

complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

46.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

47.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraph 45, above. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.  DISPUTE RESOLUTION

48.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

-17-

*JMR* 6/28/13

49.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 15 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

50.     Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

51.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

52.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII of this Consent Decree

-18-

*JMP* 6/28/13

(Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 15 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

53.     The United States shall respond to Defendant's motion within the time period allowed by the rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the rules of this Court.

54.     Standard of Review. In any dispute brought under Paragraph 51 of this Consent Decree, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and is consistent with the Objectives of this Consent Decree.

55.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 40.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X. INFORMATION COLLECTION AND RETENTION

*JMC 6/28/13*

56.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Refinery, at all reasonable times, upon presentation of credentials to:

a.      monitor the progress of activities required under this Consent Decree;

b.      verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.      obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data; and

e.      assess Defendant's compliance with this Consent Decree.

57.     Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

58.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to retain, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or

_MR 6/28/13_

procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

59. At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States made within 90 days, Defendant shall deliver any requested documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

60. Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

61. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to

-21-

*SMP 6/28/13*

applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

62.    This Consent Decree resolves:

a.    the civil claims of the United States alleged in the Complaint (and its appendices) filed in this action through the date of lodging;

b.    the civil claims that could have been brought against Lion Oil by the United States under Section 309 of the Act for violations of Section 301 of the Act for violations alleged in Administrative Order, Docket Number CWA-06-2010-1752 (NPDES Permit Number AR0000647) through date of lodging and for violations released in Arkansas Department of Environmental Quality Consent Administrative Order LIS No. 08-104 AFIN 70-00016 through the date of lodging; and

c.    the civil claims that could have been brought by the United States against Lion Oil under Section 309 of the Act for violations occurring after the Date of Lodging and on or before August 31, 2013 of the effluent limits for outfalls 001, 006, and 007 for TDS, Sulfate, and Selenium in NPDES Permit Number AR0000647 provided that the levels of TDS, Sulfate, and Selenium in the discharge do not exceed:

| SULFATE | TDS | SELENIUM | |
|---|---|---|---|
| | | | |
| (lbs/day) | (lbs/day) | (lbs/day) | |
| 16935 | 28479 | 0.946 | Monthly Avg. |
| 27884 | 35597 | 0.946 | Daily Max |

*JMP 6/28/13*

| (mg/L) | (mg/L) | (mg/L) | |
|---|---|---|---|
| 1221 | 2129 | 88.66 | Monthly Avg. |
| 1837 | 2486 | 88.66 | Daily Max |

63.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 62.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 62.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Refinery, whether related to the violations addressed in this Consent Decree or otherwise.

64.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Refinery, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 62 of this Section.

65.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations,

-23-



and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act or with any other provisions of federal, State, or local laws, regulations, or permits.

66.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

67.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.  COSTS

68.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII.  NOTICES

69.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

-24-

*JMC 6/28/13*

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-10527


and


Director
Compliance Assurance and Enforcement Division
U.S. Environmental Protection Agency, Region 6
1445 Ross Ave., Suite 1200 (6RC-EW)
Dallas, TX 75202


To EPA:

Director
Compliance Assurance and Enforcement Division
U.S. Environmental Protection Agency, Region 6
1445 Ross Ave., Suite 1200 (6RC-EW)
Dallas, TX 75202


To Defendant(s):

W.R. Chuck Hammock
Environmental Manager
Lion Oil Company
1000 McHenry
El Dorado, Arkansas 71730
Chuck.hammock@lionoil.com


With a copy to:

*SML 6/28/13*

Kent Thomas, Esquire
Executive Vice President and General Counsel
Lion Oil Company
1000 McHenry
El Dorado, Arkansas 71730
kent.thomas@lionoil.com

Michael Norman
Vice President – Environmental and Regulatory Affairs
Lion Oil Company
1000 McHenry
El Dorado, Arkansas 71730
mike.norman@lionoil.com

LeAnn Johnson Koch, Esquire
Perkins Coie LLP
700 13th Street, NW
Washington, DC 20005
leannjohnson@perkinscoie.com

70.     Any Party may, by written notice to the other Parties, change its

designated notice recipient or notice address provided above.

71.     Notices submitted pursuant to this Section shall be deemed submitted

upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the

Parties in writing.

## XIV. EFFECTIVE DATE

72.     The Effective Date of this Consent Decree shall be the date upon which

this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

whichever occurs first, as recorded on the Court's docket.

## XV. RETENTION OF JURISDICTION

-26-

*JMP 6/28/13*

73.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

## XVI.  MODIFICATION

74.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the Parties agree that a modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

75.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 55, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.  TERMINATION

76.     After Defendant has completed the Compliance requirements of this Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

77.     Completion of the Compliance requirements includes the commencement of operation of the Joint Pipeline such that all effluent discharged to the Joint Pipeline is carried

-27-

*JMR* 6/28/13

to the Ouachita River without discharge or release except from the Joint Pipeline's permitted outfall, or the implementation of a plan for NPDES permit compliance in accordance with Paragraphs 19-24 of this Consent Decree, whichever comes first, and the submission of all required reports.

78.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

79.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX of this Decree.

### XIII.  PUBLIC PARTICIPATION

80.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

### XIX.  SIGNATORIES/SERVICE

-28-

MR 6/28/13

81.     Each undersigned representative of Defendant, the Environmental Protection Agency and the Deputy Section Chief for the Environmental Enforcement Section of the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

82.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX.  INTEGRATION

83.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXI.  FINAL JUDGMENT

84.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

-29-



## *APPENDICES*

85.    The following appendices are attached to and part of this Consent Decree:

"Appendix A" is the Methodology for Measuring Interim Reductions;

Dated and entered this ‾13th‾day of ‾September‾ ,‾2013‾ .

/s/ Susan O. Hickey
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
SUSAN O. HICKEY
UNITED STATES DISTRICT COURT JUDGE
Western District of Arkansas

-30-



THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v.</u> <u>Lion Oil Company</u>

FOR PLAINTIFF UNITED STATES OF AMERICA:

Date: 7/5/13

NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section

Date: 7/8/13

BRANDON ROBERS
Trial Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-761
Phone: (202) 514-5292
Facsimile: (202) 616-6584

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v. Lion Oil Company</u>

FOR UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date: 7 · 8 · 13

JOHN BLEVINS
Division Director
Compliance Assurance and Enforcement Division
U.S. EPA, Region 6

Date: 7/2/13

THOMAS RUCKI
Office of Regional Counsel
U.S. EPA, Region 6
1445 Ross Ave., Suite 1200 (6RC-EW)
Dallas, TX 75202
Phone: (214) 665 2759

-32-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v.</u>
<u>Lion Oil Company</u>

FOR DEFENDANT LION OIL COMPANY:

Date: _6 - 28 - 2013_

STEVE COUSINS
Vice President and General Manager
Lion Oil Company

LEANN JOHNSON KOCH, ESQ.
Counsel to Lion Oil Company
Perkins Coie LLP
700 13th Street, NW
Washington, DC 20005
(202) 654-6209
leannjohnson@perkinscoie.com

-33-

APPENDIX A

The methodology Lion Oil has developed for purposes of demonstrating the reduction is based on calculating the quantity of TDS (as sulfates) that would be present without using SO2 reducing catalyst additives (the baseline) and comparing that to the TDS and sulfates present in the purge stream (based on caustic usage) after adding SO2 reducing catalyst additives.  The difference between these two data points is the percentage reduction achieved through the use of the SO2 additives.  The percent reduction is calculated as: (calculated TDS w/o desox additive – TDS with additive)/calculated TDS w/o additive.

To calculate the TDS that would have been be present without the additive, a formula was developed by multivariable linear regression using the FCC charge rate in pounds per hour and the feed sulfur content in pounds per hour. This data was taken from August 1 through August 24, 2012 while the FCCU was operating without the de-sox additive.  The actual TDS versus the calculated TDS are shown in Figure 1.

The equation uses two variables -- the FCCU charge rate (in pounds per hour) and the sulfur content of the FCCU feed (in pounds per hour, ) to calculate the amount of TDS in the purge stream (as sodium sulfate from caustic usage) as follows: TDS [lb/hr Na2SO4] = 353.0934*((0.710+(FCC Charge Rate*10$^{-6}$ [Lb/Hr])+(0.000263*FCC Feed Sulfur [Lb/Hr])).  The following figure shows the calculated TDS compared to actual TDS (measured as sodium sulfate from caustic usage):



The next figure shows the actual TDS with the additive compared with the calculated TDS that would have occurred without the additive and the resulting % reduction in TDS.

